UNITED STATES DISTRICT COURT
EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

STACY BELLMORE-BYRNE,

                Plaintiff,                Civil Action No. 15-11950
                                            Honorable Paul D. Borman
       v.                                  Magistrate Judge David R. Grand

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

### REPORT AND RECOMMENDATION
### ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [19, 20]

Plaintiff Stacy Bellmore-Byrne ("Plaintiff") brings this action pursuant to 42 U.S.C. §405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [19, 20], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that Plaintiff has offered new and material evidence, and has shown good cause why that evidence was not presented in the prior proceeding. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [**20**] be **DENIED**, Plaintiff's Motion for Summary Judgment [**19**] be **GRANTED IN PART** to the extent it seeks remand and **DENIED IN PART** to the extent it seeks outright reversal and an award of benefits, and that, pursuant to sentence six of 42 U.S.C. §405(g), the Commissioner's decision be **REMANDED** to the Administrative Law Judge ("ALJ") for further

proceedings consistent with this Report and Recommendation.

## II.  REPORT

### A.  Procedural History

On March 11, 2013, and July 9, 2013, Plaintiff filed applications for DIB and SSI, respectively, alleging disability as of June 8, 2010. (Tr. 145-46, 612-17). These claims were denied initially on August 1, 2013, and September 4, 2013, respectively. (Tr. 99-103, 608-11). Thereafter, Plaintiff filed a timely request for an administrative hearing, which was held on September 26, 2014, before ALJ Ryan Johannes. (Tr. 650-76). Plaintiff, who was represented by attorney Robert Samoray, testified, as did vocational expert ("VE") Charles McBee. (*Id.*). On January 14, 2015, the ALJ issued a written decision finding that Plaintiff is not disabled. (Tr. 67-80). On May 4, 2015, the Appeals Council, after having received additional medical records from Plaintiff, denied review. (Tr. 6-9). Plaintiff timely filed for judicial review of the final decision on May 30, 2015. (Doc. #1).

### B.  Framework for Disability Determinations

Under the Act, SSI and DIB are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without

further analysis.

Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]."  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**C.     Background**

   *1.     Disability Reports and Plaintiff's Testimony*

At the time of the administrative hearing, Plaintiff was 42 years old, and at 5'5" tall, weighed 170 pounds. (Tr. 655).  She was divorced and lived in a mobile home with her two children, a fifteen-year-old daughter and a seventeen-year-old son. (Tr. 173, 210, 655-56).  She graduated from high school and earned an Associate's Degree. (Tr. 161, 656).  Previously, Plaintiff worked as a histopathology technician for approximately fifteen years. (Tr. 162, 656).  However, she has not worked since July 8, 2010, when her employment was terminated because she could no longer perform the duties of her job. (Tr. 161, 667).

Plaintiff alleges disability as a result of breast cancer, neuropathy (numbness, pain, and tingling in her hands and feet), migraine headaches, coarctation of the aorta (which causes high

blood pressure), and depression. (Tr. 160, 657-58, 660). She was diagnosed with breast cancer in February 2008. (Tr. 219). She has undergone significant cancer treatment – specifically, a total of thirteen surgeries (including a bilateral mastectomy and reconstruction) and chemotherapy, and has lost some of the use of her hands and feet as a result. (Tr. 173, 219, 658). At the time of the administrative hearing, Plaintiff believed her cancer was in remission. (Tr. 658). However, she testified that she had been prescribed an anti-inflammatory medication because her chest was inflamed; she had been suffering from what was believed to be bronchitis, pneumonia, pleurisy, and ongoing coughing, since at least May of 2014. (Tr. 662-63).

The amount of time Plaintiff can sit, stand, and walk varies, depending on whether she is experiencing numbness. (Tr. 666). She has difficulty reaching overhead because her lymph nodes were removed. (Tr. 667). She has a driver's license, but because she has numbness in her hands and feet at times, she only drives locally (where she can pull over until the numbness passes). (Tr. 211, 655). She testified that her neuropathy comes and goes; at times, she is able to fasten buttons, pick up coins, turn doorknobs, and pull zippers, but at other points in the day, she cannot perform these tasks. (Tr. 659-60). The same is true with household chores – sometimes she can prepare simple meals, do laundry, and go grocery shopping, and at other times her children and mother must help with these tasks. (Tr. 175-76, 212, 664). She has difficulty remembering things, and she takes daily naps because her medications cause drowsiness. (Tr. 174, 664, 668).

    2.    *Medical Evidence*[1]

        a.    *Medical Records Submitted to the ALJ*

Plaintiff was diagnosed with breast cancer in 2008 and underwent a bilateral mastectomy

---

[1] Because the Court is recommending remand for further consideration of new evidence related to Plaintiff's cancer, it will primarily focus on medical records pertaining to this impairment.

with reconstruction, lymph node resection, and chemotherapy. (Tr. 383-85, 558, 577). When Plaintiff complained of "generalized bone pain and some memory changes" in December 2009, her treating physician, Charu Trivedi, M.D., ordered an MRI of her brain, a chest x-ray, and bone scan. (Tr. 409). The bone scan showed a focus of increased activity involving the posterior right 9th rib, which was "suspicious for metastatic disease." (Tr. 411). The brain MRI showed small vessel ischemic changes but was otherwise unremarkable. (Tr. 412).

On February 16, 2010, Dr. Trivedi observed that Plaintiff's recent bone scan showed "some subtle abnormalities," but noted that a subsequent PET scan failed to show any significant abnormality pertaining to cancer. (Tr. 318). He recommended that she take her films to the University of Michigan for follow-up because he could not rule out metastasis. (Tr. 318). In November 2010, Dr. Trivedi ordered a follow-up bone scan, since her last one was "questionable," but this scan showed "no evidence of metastatic disease." (Tr. 316-17). Plaintiff continued to treat with Dr. Trivedi through 2011 and 2012. (Tr. 314-15).

In March 2013, Plaintiff complained to Dr. Trivedi of tingling in her hands and feet, as well as her right arm (somewhat different from the "bone pain" she had previously reported). (Tr. 312). Dr. Trivedi ordered an MRI of her brain, which was stable, showing continued white matter ischemic changes but no evidence of metastatic disease. (Tr. 372). In May 2013, Plaintiff complained to her primary care physician, Ram Garg, M.D., of numbness and tingling in both hands, arms, and feet, feeling off-balance, and falling a couple of times. (Tr. 362, 369). Dr. Garg listed diagnoses of multiple sclerosis and peripheral neuropathy. (Tr. 364).

Plaintiff continued to report numbness and tingling in her hands and feet to her new primary care physician, James Doyle, D.O., in August 2013. (Tr. 468-71). An angiogram of her chest, performed on September 25, 2013, after complaints of chest pain and shortness of breath,

was stable, continuing to show previously-diagnosed pseudocoarctation of the thoracic aorta. (Tr. 475). EMG testing and nerve conduction studies were within normal limits that month (Tr. 481), and treating neurologist Omar Ahmad, M.D. found no electrodiagnostic evidence of a large fiber peripheral polyneuropathy or lumbosacral radiculopathy. (Tr. 481). An EEG report in mid-October 2013 indicated mild encephalopathy, however. (Tr. 482). Dr. Ahmad continued to treat Plaintiff throughout 2014, attributing her ongoing symptoms to a small fiber peripheral polyneuropathy, which he treated primarily with medication. (Tr. 483-88, 575-80).

In October 2014, Dr. Ahmad completed a medical source statement in which he diagnosed Plaintiff with cognitive deficits and disturbance of skin sensation. (Tr. 571-73). He believed she would continue to experience numbness and memory loss and pointed to the EEG results, as well as the MRI evidence of chronic ischemic white matter changes, in support of his opinion. (Tr. 571). Dr. Ahmad further opined that Plaintiff could stand and sit for zero to two hours in an eight-hour work day and could never lift even less than ten pounds. (Tr. 572). He believed Plaintiff's symptoms were severe enough to interfere frequently with the attention and concentration necessary to perform even simple work tasks, opined that she would be incapable of even "low stress" jobs, and indicated that she would be absent from work more than four days per month. (Tr. 573).

In the meantime, at a visit to Dr. Trivedi on March 31, 2014, Plaintiff complained of some chest-area pain (where she had saline prostheses), and expressed concern that there was "something underneath" the implants. (Tr. 414). Dr. Trivedi ordered an MRI of her breasts, which showed no evidence of malignancy. (Tr. 418). On July 2, 2014, Plaintiff presented to the emergency room, complaining of a continued cough and chest congestion. (Tr. 564-70). She was diagnosed with apparent bronchitis and discharged with medications. (*Id.*).

On November 25, 2014, Clifford Buchman, D.O. performed a consultative orthopedic examination of Plaintiff. (Tr. 582-95). On examination, Plaintiff's reflexes were symmetrical, she was able to heel/toe walk, and her gait and sensation were normal. (Tr. 584). Dr. Buchman opined that Plaintiff was able to perform light work and sit for up to four hours, stand for three hours, and walk for three hours in a work day. (Tr. 587). He believed she could never reach overhead; could frequently otherwise reach and manipulate; could never climb ladders or scaffolds; could never balance; and could occasionally stoop, kneel, crouch, and crawl. (Tr. 588, 593).

### b. *Medical Records Submitted to the Appeals Council*

After the administrative hearing and before the ALJ issued his decision, Plaintiff underwent additional medical treatment, the records of which were presented to the Appeals Council for consideration. (Tr. 622-49). Specifically, after continuing to suffer from a cough and chest pain for months, Plaintiff saw Navin Jain, M.D. at Pulmonary & Sleep Specialists on December 1, 2014. (Tr. 631-34). He ordered laboratory work and a pulmonary function test and prescribed medication. (Tr. 633). At her next visit, on December 22, 2014, Plaintiff still had a cough with chest pain and shortness of breath, and Dr. Jain ordered a CT of her chest, apparently suspecting "infiltrates in both upper lobes." (Tr. 636-39). This chest CT, performed on December 27, 2014, showed irregular nodules in Plaintiff's lungs, which appeared as "potential neoplasm." (Tr. 626-27). In addition, records indicate that Plaintiff was hospitalized from February 16, 2015, to March 6, 2015, for malignant pleural effusion and recurrent breast cancer. (Tr. 14-62). Moreover, an October 19, 2015 note from Plaintiff's treating oncologist, Norah Henry, M.D., confirms that Plaintiff is "terminally ill with a diagnosis of stage IV metastatic breast cancer widespread to the bones, lungs, and pleural fluid." (Doc. #19-1).

7

*3.     Vocational Expert's Testimony*

Charles McBee testified as an independent vocational expert ("VE") at the administrative hearing. (Tr. 670-75). The ALJ asked the VE to imagine a hypothetical individual of Plaintiff's age, education, and work experience who can perform light work with the following additional limitations: only occasional balancing, stooping, kneeling, crouching, crawling, climbing of stairs and ramps, and operating foot controls; no climbing of ladders, ropes, or scaffolds; no overhead reaching; frequent handling and fingering; and no exposure to moving mechanical parts and unprotected heights. (Tr. 671-72). The VE testified that the hypothetical individual would be capable of performing Plaintiff's past relevant work and would also be capable of working in the jobs of mail clerk, photocopy machine operator, and cleaner. (*Id.*). The ALJ then added an additional limitation, restricting the hypothetical individual to only simple, repetitive tasks; simple work-related decisions; and occasional handling and fingering. (Tr. 672). The VE testified that this individual would not be able to perform Plaintiff's past relevant work but would be able to perform the jobs of counter clerk, rental consultant, and usher. (Tr. 673).

**D.     The ALJ's Findings**

At Step One of the five-step sequential analysis, the ALJ found that Plaintiff has not engaged in substantial gainful activity since June 8, 2010 (the alleged onset date). (Tr. 69). At Step Two, the ALJ found that Plaintiff has the severe impairments of history of breast cancer; status post surgeries and chemotherapy; neuropathy; mood disorder, not otherwise specified; and history of pseudocoarctation of the thoracic aorta. (Tr. 69-70). At Step Three, he found that Plaintiff's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 70).

The ALJ then found that Plaintiff retains the residual functional capacity ("RFC") to perform light work with the following additional limitations: only occasional balancing,

8

stooping, kneeling, crouching, crawling, climbing of stairs and ramps, and operating foot controls; no climbing of ladders, ropes, or scaffolds; no overhead reaching; frequent handling and fingering; no exposure to moving mechanical parts and unprotected heights; and limited to simple, repetitive tasks. (Tr. 72-73).

At Step Four, the ALJ determined that Plaintiff is unable to perform her past relevant work. (Tr. 78). At Step Five, the ALJ concluded, based in part on the VE's testimony, that Plaintiff is capable of performing a significant number of jobs that exist in the national economy. (Tr. 79). As a result, the ALJ found that Plaintiff is not disabled under the Act. (Tr. 80).

### E.  Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide

questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion'").

**F.  Analysis**

In this case, one of Plaintiff's principal arguments is that remand is appropriate pursuant to sentence six of 42 U.S.C. §405(g) for consideration of the additional medical evidence first

10

submitted to the Appeals Council.[2] (Doc. #19 at 12-13). Specifically, Plaintiff points to records establishing that her breast cancer recurred and metastasized to her bones, lungs, and pleural fluid, resulting in a multi-week hospitalization and a terminal prognosis. For the reasons set forth below, the Court finds that Plaintiff has established the propriety of a sentence six remand.

Remand to consider additional evidence is appropriate when the evidence is new and material, and good cause is shown as to why it was not presented at the prior proceeding. *See* 42 U.S.C. §405(g); *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984). Evidence is "new" if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (internal quotations omitted). Here, the medical evidence at issue – from December 2014 forward – is clearly "new" evidence, as these doctors'/hospital visits and this medical treatment did not occur until after the September 26, 2014 administrative hearing. (Tr. 14-62, 622-49). Moreover, the Court finds good cause[3] for Plaintiff's failure to submit this evidence to the ALJ for consideration, as the evidence apparently documents an ongoing, real-time evaluation of Plaintiff's condition.

With respect to the materiality prong, courts have held that additional evidence is "material" only if there is "a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 712 (6th Cir. 1988). The Commissioner argues

---

[2] Plaintiff advances other arguments in her motion for summary judgment, namely that the ALJ's credibility determination is not supported by substantial evidence and that the ALJ erred in evaluating the medical opinions of record. (Doc. #19 at 4-11). Because the Court agrees that a sentence six remand is appropriate, however, it need not pass on Plaintiff's other alleged errors. Nevertheless, on remand the ALJ should fully consider these other issues raised by Plaintiff.

[3] Indeed, the Commissioner does not even argue that the "good cause" requirement is not satisfied.

that the new evidence is not material because, although it shows that Plaintiff's breast cancer recurred and spread to her bones, lungs, and pleural fluid, "her breast cancer did not metastasize or recur during the relevant period."[4] (Doc. #20 at 21-22). This argument is not persuasive.

It is true that "evidence of a subsequent deterioration or change in condition after the administrative hearing is deemed immaterial." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 478 (6th Cir. 2003) (quoting *Wyatt*, 974 F.2d at 685). Here, however, while it was not determined that Plaintiff's breast cancer had recurred and metastasized until after the administrative hearing, it is clear that, both prior to and at the time of the administrative hearing, she was continuing to complain of ongoing pain, complications, and difficulties that at least appear to be related to her eventual diagnosis. For example, the record reveals that Plaintiff complained of "generalized bone pain" as early as December 2009, spurring her oncologist to order a chest x-ray and bone scan. (Tr. 409). That initial bone scan was "suspicious for metastatic disease" (Tr. 411), and, although a subsequent bone scan showed "no evidence of metastatic disease" (Tr. 316-17), Plaintiff's complaints of pain, along with numbness and tingling, continued and more scans were ordered.

Moreover, beginning at least as early as September 2013 – more than one year before the administrative hearing – Plaintiff complained of chest pain and shortness of breath. (Tr. 475). An angiogram of her chest, performed on September 25, 2013, showed no new abnormalities. (*Id.*). At her next visit to Dr. Trivedi in March 2014, Plaintiff continued to complain of chest-area pain (where she had saline prostheses), and expressed concern that there was "something

---

[4] The Commissioner also asserts that Plaintiff's "complaints of disability did not center on respiratory or bone issues." (Doc. #20 at 22). But this position lacks merit. Although Plaintiff may not have specifically listed such concerns as disabling conditions on relevant disability reports, she complained of disability as a result of complications from breast cancer (which clearly encompasses metastasis to her bones and lungs) and repeatedly voiced complaints of ongoing bone pain, chest pain, and cough throughout the relevant time period.

underneath" the implants. (Tr. 414). A June 2014 MRI of her breasts showed no evidence of malignancy. (Tr. 418). In July 2014, however, Plaintiff went to the emergency room, complaining of a continued cough and chest congestion. (Tr. 564-70). And, Plaintiff testified at the administrative hearing that she had been prescribed an anti-inflammatory medication because her chest was inflamed; she had been suffering from what she believed to be bronchitis, pneumonia, pleurisy, and ongoing coughing, since May of 2014. (Tr. 662-63).

Given all of these facts, the Court cannot conclude – as the Commissioner urges – that the new evidence submitted to the Appeals Council is not material because it evidences only a deterioration or change in condition that occurred after the administrative hearing. Plaintiff's testimony, as well as the medical evidence, establishes that she complained of chest pain and suffered from what she believed to be ongoing respiratory conditions in the year preceding the administrative hearing. Although metastasis of Plaintiff's breast cancer to her lungs and bones was not discovered and diagnosed until a few months after the hearing, it certainly appears possible (if not reasonably likely) that this metastasis occurred over an extended period of time (and not simply within the few weeks between the hearing and the ALJ's decision). The Court finds that, coupled with the other medical evidence and hearing testimony discussed above, had this new evidence been available to the ALJ at the time of his decision, there is at least a "reasonable probability" that he would have reached a different conclusion. Thus, this new evidence is material, and warrants remand under sentence six of §405(g).

### III.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment **[19]** be **GRANTED IN PART**, to the extent it seeks a remand pursuant to sentence six of 42 U.S.C. §405(g), and **DENIED IN PART** to the extent it seeks an outright

reversal and award of benefits; the Commissioner's Motion **[20]** be **DENIED**; and this case be **REMANDED** to the ALJ for further proceedings consistent with this Report and Recommendation.

Dated: June 23, 2016  
Ann Arbor, Michigan

s/David R. Grand  
DAVID R. GRAND  
United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 23, 2016.

s/Eddrey O. Butts  
EDDREY O. BUTTS  
Case Manager